**UNITED STATES BANKRUPTCY COURT
FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA**

IN RE: THE MATTER OF

KATHRYN GALE RHULE

DEBTOR.

CASE NO.: 04-20488
CHAPTER 13

FILED

JUN 18 2004

TERESA L. DEPPNER, CLERK
U.S. DISTRICT & BANKRUPTCY COURTS
SOUTHERN DISTRICT OF WEST VIRGINIA

_______________________________/

MIDFIRST BANK
MOVANT,

VS.

KATHRYN GALE RHULE
AND
HELEN MORRIS, TRUSTEE,
RESPONDENT(S).

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

Midfirst Bank (hereinafter "Movant"), by Nathan H. Wasser, its attorney, moves this Honorable Court to grant the Movant relief from the Automatic Stay of Section 362 of the U.S. Bankruptcy Code and for reasons therefore states as follows:

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. 1334 and U.S.C. Section 362.

2. The Debtor instituted proceedings in this Court in her Chapter 13 proceeding on or about February 24, 2004. Pursuant to the provisions of 11 U.S.C. Section 362, the filing of the Debtor's petition operated as an automatic stay against the Movant's rights as a creditor to proceed against the Debtor, her property, and the property of the Debtor's estate.

3. Helen Morris was appointed by the Court as Trustee of the Debtor's estate.

4. At the time of the filing of this petition seeking relief from this Court, Debtor was the owner of real property known as 931 Red Oak Street, Charleston, WV 25302.

5. On or about December 12, 1978, Debtor executed a Deed of Trust encumbering said property. Said deed of trust is recorded among the Land Records of Kanawha County, West Virginia. By the terms of said deed of trust Debtor was justly indebted to the Movant in the sum of $22,500.00, evidenced by a Note executed by the Debtor of even date with said deed of trust, and in the same amount.

6. The amount of Debtor's outstanding principal balance as of June 15, 2004, is $10,311.49, the monthly payment being $774.32.

7. As of June 15, 2004, Debtor was $2,322.96 in arrears with regard to her post-petition payments (April – June 2004) and $30.00 in assessable late charges.

8. Movant asserts that because Debtor has failed in her obligations in this bankruptcy proceeding on her failure, once again to make her scheduled post-petition payments as called for by her note and security Deed of Trust, good cause exists for the lifting of the stay.

Furthermore, Movant asserts sufficient cause exists to waive the requirement of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon this Honorable Court's signature.

**WHEREFORE**, Movant prays that this Court enter an Order lifting the stay imposed by Section 362 of the Bankruptcy Code to enable Movant to proceed with foreclosure of the real property known as 931 Red Oak Street, Charleston, WV 25302.

(COS on succeeding page)

Respectfully submitted,

Nathan H. Wasser
WV Bar # 8631
Wasser Associates
43 Greene Street
Cumberland, MD 21502
(301) 759-2844
Attorney for Movant

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 15th day of June, 2004, a copy of the foregoing Motion for Relief was mailed first class, postage prepaid to the following: Helen Morris, Trustee, P.O. Box 8535, South Charleston, WV 25303; Kathryn Gale Rhule, 931 Red Oak Street, Charleston, WV 25302; Robin L. Godfrey, Esquire, 800 Security Building, Charleston, WV 25301.

Nathan H. Wasser, Esquire

\\Edoodah2\Wasser\Live\docs\1200\1200.002\1200C002.MFR.doc(lmm)

VA Form 26-6346w (Home Loan)
Revised June 1974
Use Optional Section
1810, Title 38, U.S.C.
Acceptable to Federal
National Mortgage
Association.

WEST VIRGINIA
K# 255770-0
VA# LH00058428

# DEED OF TRUST NOTE

Charleston, West Virginia.

December 12, 19 78.

FOR VALUE RECEIVED, the undersigned promise(s) to pay to

THE KISSELL COMPANY

, or order, the principal sum of Twenty-Two Thousand Five Hundred and NO/100--- Dollars ($ 22,500.00), with interest from date at the rate of nine and one-half per centum ( 9.5 %) per annum on the unpaid balance until paid. The said principal and interest shall be payable at the office of The Kissell Company 30 Warder Street in Springfield, Ohio, or at such other place as the holder may designate in writing delivered or mailed to the debtor, in monthly installments of One Hundred Eighty-Nine and 23/100----- Dollars ($ 189.23 ), commencing on the first day of February, 1979, and continuing on the first day of each month thereafter until this note is fully paid, except that, if not sooner paid, the final payment of principal and interest shall be due and payable on the first day of January, 2009.

Privilege is reserved to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or one hundred dollars ($100.00), whichever is less. Prepayment in full shall be credited on the date received. Partial prepayment, other than on an installment due date, need not be credited until the next following installment due date or thirty days after such prepayment, whichever is earlier. Prepayment shall not be in conflict with State Law.

If any deficiency in the payment of any installment under this note is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

This note is secured by Deed of Trust of even date executed by the undersigned on certain property described therein and represents money actually used for the acquisition of said property or the improvements thereon.

The undersigned waive presentment, protest, notice and the benefit of the homestead exemption as to this debt.

Richard L. White
Richard L. White

Wilma A. White
Wilma A. White

THIS IS TO CERTIFY that this is the note described in and secured by Deed of Trust of even date herewith and in the same principal amount as herein stated to Theodore H. Ghiz and Drexel M. Vealey, Trustee(s), on real estate located in Kanawha County, State of West Virginia.

Dated December 12, 19 78.

Myrtle Jean Young
Notary Public.

My Commission expires July 6, 1988

530468

683225691NTE

# Note Allonge

**Statement of Purpose:** This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

| | | | |
|---|---|---|---|
| Investor Number: | LH00058428 | Pool Number: | 29024 |
| Loan Number: | 07-47-26439 | Loan Date: | 12/12/78 |
| Original Loan Amount: | $22,500.00 | | |
| Original Mortgagor: | RICHARD L. WHITE AND WILMA A. WHITE | | |
| Property Address: | 931 RED OAK ST, CHARLESTON, WV 253022540 | | |

Pay to the Order of
First Nationwide Mortgage Corporation, a Delaware Corporation,
Without Recourse
Lomas Mortgage USA, Inc., f/k/a The Lomas & Nettleton Company,
a Connecticut Corporation
or
Pay to the Order of
First Nationwide Mortgage Corporation, a Delaware Corporation,
Without Recourse
Lomas Mortgage USA, Inc., f/k/a The Lomas & Nettleton Company,
a Connecticut Corporation
Successor by Merger to Advance Mortgage Corporation

By: Natalie J. Sekel
Name: Natalie J. Sekel
Title: Assistant Vice President

WITHOUT RECOURSE PAY
TO THE ORDER OF:

FROM MIDFIRST BANK
BY: Bette J. Garver
VICE PRESIDENT
BETTE J. GARVER

Pay to the Order of

MIDFIRST BANK
Without Recourse
First Nationwide Mortgage Corporation, a Delaware Corporation

By: Donna Bowles
Name: Donna Bowles
Title: Assistant Vice President

912256

683225691ALE



# Note Allonge

Statement of Purpose: This Note Allonge is attached to and made part of the Note, for the purpose of Noteholder Endorsements to evidence transfer of interest.

Loan Number: 6832256916

Loan Date: 12/12/78

Original Loan Amount: $22,500.00

Original Lender Name:

THE KISSELL COMPANY

Pool Number: 00029024CD

Assignee Loan Number: 38348460

Borrower's Name:

Richard L. White and Wilma A. White

Property Address: 931 RED OAK ST
CHARLESTON, WV 25302

Pay to the Order of

MidFirst Bank, a federally chartered savings association

Without Recourse

First Nationwide Mortgage Corporation, a Delaware Corporation

By: Donna Kay Bowles

Name: Donna Kay Bowels

Title: Vice President

Pay to the Order of

______________________________

Without Recourse

MidFirst Bank, a federally chartered savings association

By:

Name: Betty Seatter

Title: Vice President

38348460ALN

THE LOMAS & NETTLETON COMPANY

ASSISTANT SECRETARY

WITHOUT RECOURSE
PAY TO THE ORDER OF

THE LOMAS & NETTLETON COMPANY

BY

S L [illegible], Vice President

CANCELLED

BOOK 1550 PAGE 83

VA Form 26-6346 (Home Loan)
August 1974. Use Optional
Section 1810, Title 38, U.S.C.
Acceptable to Federal National
Mortgage Association.

WEST VIRGINIA
P# 29024
K# 255770-0
VA# LH00058428

# DEED OF TRUST

THIS DEED, made this 12th day of December, in the year 1978, between RICHARD L. WHITE and WILMA A. WHITE, his wife, hereinafter called Grantor, and THEODORE H. GHIZ, a resident of Kanawha County, and DREXEL M. VEALEY, a resident of Kanawha County, West Virginia as Trustee (s), hereinafter called Trustee or Trustees:

WITNESSETH, that said Grantor does grant and assign with General Warranty unto the said Trustee the following property, in the City of Charleston County of Kanawha and State of West Virginia, to wit: Being a part of Lots Nos. Seventy-Seven (77) and Seventy-Eight (78), of Glenwood Heights Addition to the City of Charleston, as shown on the map of said Addition of record in the office of the Clerk of the County Commission of Kanawha County, West Virginia, in Map Book 2, at page 15, and being more particularly bounded and described as follows: Beginning at a point on the southern line of Red Oak Street 3 feet east from the point where the dividing line between said Lots Nos. 77 and 78 intersect said southern line of Red Oak Street; thence in a southern direction in a line between Lots Nos. 77 and 78 a distance of 122 1/2 feet to a stake; thence in a western direction in a line parallel with said southern line of Red Oak Street a distance of 31 feet to a stake; thence in a northern direction in a line parallel to and 28 feet west from the dividing line between Lots Nos. 77 and 78 to the southern line of Red Oak Street; thence in an eastern direction with the southern line of Red Oak Street a distance of 31 feet to the place of beginning; and being a strip three feet wide from the western side of Lot No. 77 (Northern one-half) and twenty-eight feet from the eastern side of Lot No. 78, making a lot fronting 31 feet on Red Oak Street, and extending back between parallel lines a distance of 122 feet; and being the same property conveyed to Grantor by George P. Perry, Jr. and Anne R. Perry, his wife, by deed of even date herewith and to be recorded concurrently herewith. Reference is here made to the aforesaid map and deed for a more particular description of the property hereby conveyed.

THEODORE H. GHIZ
800 KANAWHA BLVD. E.
CHARLESTON, W.V. 25301

RECORDED 1978 DEC 12 PM 4 CLERK OF KANAWHA COUNTY, W. VA.

AND ALSO all fixtures now or hereafter attached to or used in connection with the property herein described; and in addition thereto the following described household appliances, which are, and shall be deemed to be, fixtures and a part of the realty herein conveyed, and are a part of the security for the indebtedness herein mentioned, and shall be covered by this Deed of Trust:

663225691DOT

IN TRUST to secure to The Kissell Company a corporation organized and existing under the laws of the State of Ohio, or its assigns, the payment of the principal sum of Twenty-Two Thousand Five Hundred and NO/100------Dollars ($22,500.00), with interest from date at the rate of nine and one-half per centum ( 9.5%) per annum on the unpaid balance until paid, as evidenced by a certain promissory note of even date herewith, and made by Richard L. White and Wilma A. White, his wife, payable to the order of The Kissell Company at its office in Springfield, Ohio, or at such other place as the holder may designate in writing delivered or mailed to the Grantor, said principal and interest being payable in monthly installments of One Hundred Eighty-Nine and 23/100 Dollars ($ 189.23 ) commencing on the first day of February, 1979, and continuing thereafter until the note is fully paid, except that, if not sooner paid, the entire indebtedness shall be due and payable on the first day of January, 2009.

The beneficial owner and holder of the indebtedness hereby secured at the time of the execution and delivery hereof is The Kissell Company 30 Warder Street said payee of said note, residing and doing business at Springfield, Ohio 45501

Also upon the further trusts that Grantor shall remain in quiet and peaceable possession of the above-granted and described premises, and take the profits thereof to his own use, until default be made in the payment of any indebtedness hereby secured, or in the performance of any of the covenants herein provided; and, also, to secure the reimbursement to the holder of said note and to the Trustee, or substitute Trustee, and any purchaser or purchasers under any sale or sales as provided by this Trust, for any and all costs and expenses incurred in respect thereto, including reasonable counsel fees incurred or paid on account of any litigation at law or in equity which may arise in respect to this Trust, or to the indebtedness on the property heretofore mentioned, or in obtaining possession of the premises after any sale which may be made as hereinafter provided.

Upon the full payment of the indebtedness secured hereby, and the interest thereon, and all moneys advanced or expended, as herein provided, and all other proper costs, charges, commissions, half commissions, and expenses, the Trustee shall release and reconvey the above-described property unto and at the cost of the Grantor.

In the event default shall be made in the payment of the note secured hereby or of any monthly installment of principal and interest as therein provided, or in the payment of any of the other sums payable under the terms hereof; or upon any default in payment on demand of any money advanced by the holder of said note on account of any proper cost, charge, commission, or expense in and about the same, or on account of any tax or assessment or insurance, or expense of litigation, with interest thereon at the rate provided for in the principal indebtedness from date of such advance (it being hereby agreed that on default in the payment of any tax or assessment or insurance premium or any payment on account thereof, or in the payment of any said costs, expense of litigation, as aforesaid, the holder of said note may pay the same, and all sums so advanced, with interest as aforesaid, shall immediately attach as a lien hereunder, and be payable on demand), or upon failure to keep and perform any of the other conditions or covenants herein provided; then upon any and every such default or if Grantor be adjudicated bankrupt or made defendant in a bankruptcy or receivership proceeding, the holder of the note may treat the whole principal debt hereby secured as thereupon immediately due and payable, and shall in order to recover said principal debt and interest thereon until paid, have the right then or thereafter at any time to sue thereon at law or in equity, or to enforce payment thereof by means of any remedies or provisions in these presents contained; and these rights shall exist notwithstanding that by the terms of said principal note it may not on its face be due.

In the event of default the Trustee, on being required so to do by the holder of the note, shall sell the property hereinbefore conveyed at public auction, for cash on day of sale, to the highest bidder, at the front door of the courthouse of    Kanawha    County, after first giving notice of the time, place, and terms of such sale by posting same at said courthouse door for four (4) weeks preceding such sale, and by publishing a like notice once a week for four (4) successive weeks in some newspaper published in said County; *provided*, that if, upon the day appointed for sale, the Trustees shall deem it advisable for any reason, he may adjourn such sale from time to time by oral or other announcement at the place of sale, in which event no further advertisement or posting the notice of sale shall be necessary.

Personal service of notice of sale, other than notice by publication, is hereby waived.

The proceeds of such sale are to be distributed as follows: (1) The expense of executing this Trust, including a Trustee's commission of    Five    per centum ( 5 %) on the gross proceeds of sale hereunder, and all proper costs, charges, and expenses, including all attorneys' and other proper fees, and costs herein provided for, and all moneys advanced for costs or expenses, or expense of litigation as aforesaid, or taxes or assessments or insurance, with interest thereon as aforesaid, and all taxes, general and special, and assessments, due upon said land and premises at the time of sale; (2) to the amount of principal and interest then payable upon said note (first, to the holder(s) thereof, exclusive of the Veterans Administration as subrogee, and second, to the Veterans Administration for any sums paid by it on account of the guaranty or insurance of the indebtedness secured hereby); (3) the remainder of said proceeds, if any, to Grantor, upon delivery of and surrender to the purchaser of possession of the premises, less the expense, if any, of obtaining possession. At any sale hereunder the Trustee shall have authority and at his discretion to require any bidder to deposit prior to receiving his bid or to knocking out the property to him a bidder's deposit of not more than $2,250.00, which shall be refunded to the bidder unless the property is sold to him, otherwise to be applied to his credit in settlement, or if he fails to complete his purchase promptly, to be applied to pay the costs and expenses of sale and the balance, if any, to be retained by the Trustee, as his compensation in connection with the sale.

If the said property shall be advertised for sale as herein provided and not sold, the Trustee shall be entitled to a reasonable commission not exceeding one-half the commission above provided, to be computed on the amount of principal then unpaid.

Insofar as permitted by law, the holder of the indebtedness secured by this Deed of Trust shall be entitled to remove, substitute, or add a Trustee or Trustees, at its option, with or without cause or notice, by instrument duly executed, acknowledged and recorded among the land records of the county aforesaid. The Trustees herein named shall be jointly and severally vested with all of the title, rights, duties, power and authority hereby granted them or hereby created so that, if either of them die, remove from West Virginia, resign, refuse to act, or decline to accept the trust, the other may serve and act, solely and alone, with full absolute title, right, power and authority in the premises. Either or both of said Trustees may act by agent or attorney in the performance of any right or duty hereunder.

In order more fully to protect the security of this Deed of Trust, Grantor hereby covenants:

1. He will promptly pay the principal of and interest on the indebtedness evidenced by the said note, at the times and in the manner therein provided. Privilege is reserved to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or one hundred dollars ($100.00), whichever is less. Prepayment in full shall be credited on the date received. Partial prepayment, other than on an installment due date, need not be credited until the next following installment due date or thirty days after such prepayment, whichever is earlier.

2. Together with and in addition to the monthly payment of principal and interest payable under the terms of the note secured hereby, he will pay to the holder of the note as trustee (under the terms of this trust as hereinafter stated) on the first day of each month until it is fully paid:

   (a) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable to renew the policies of fire and other hazard insurance on the premises covered by this Deed of Trust, plus taxes and assessments next due on these premises (all as estimated by the holder of the note, and of which the Grantor is notified) less all sums

already paid therefor, divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by the holder of the note in trust to pay said ground rents, premiums, taxes and special assessments.

(b) The aggregate of the amounts payable pursuant to subparagraph (a) and those payable on the note secured hereby, shall be paid in a single payment each month, to be applied to the following items in the order stated:

(I) ground rents, taxes, special assessments, fire and other hazard insurance premiums;

(II) interest on the note secured hereby; and

(III) amortization of the principal of said note.

Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the Grantor prior to the due date of the next such payment, constitute an event of default under this Deed of Trust. At holder's option, Grantor will pay a "late charge" not exceeding four per centum (4%) of any installment ~~when paid more than fifteen (15) days~~ after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured thereby. *But in no event

3. If the total of the payments made by the Grantor under (a) of paragraph 2 preceding shall exceed the amount of payments actually made by the holder of the note as trustee secured hereby for ground rents, taxes, or assessments or insurance premiums, as the case may be, the excess shall be credited on subsequent payments to be made by the Grantor for such items. If, however, such monthly payments shall not be sufficient to pay such items when the same shall become due and payable, then Grantor shall pay to the holder of said note as trustee any amount necessary to make up the deficiency within thirty (30) days after written notice from the holder stating the amount of the deficiency, which notice may be given by mail. If at any time the Grantor shall tender to the holder of said note, in accordance with the provisions thereof, full payment of the entire indebtedness represented thereby, said holder shall as trustee, in computing the amount of such indebtedness, credit thereon any credit balance accumulated under the provisions of (a) of paragraph 2 hereof. If there shall be a default under any of the provisions of this Deed of Trust resulting in a public sale of the premises covered hereby, or if the property is otherwise acquired after default, the holder of the note shall apply as trustee, at the time of commencement of such proceedings, or at the time the property is otherwise acquired, the credit balance accumulated under (a) of paragraph 2 preceding, as a credit on the interest accrued and unpaid and the balance to the principal then remaining unpaid on said note.

4. Grantor will continuously maintain hazard insurance, of such type or types and amounts as the holder of the note may from time to time require, on the improvements now or hereafter on said premises, and except when payment for all such premiums has theretofore been made under (a) of paragraph 2 hereof, will pay promptly when due any premiums therefor. Such insurance shall be maintained in some solvent insurance company approved by the Trustee for the benefit of the holder of the note hereunder. Grantor will deposit with the Trustee the policies, with standard loss payable clause with full contribution in favor of the Trustee as his interest may appear; and the Grantor further covenants that in the event of his failure to keep the property so insured and the policies so deposited, then the Trustee or the holder of the note may, at their, his, or its option, effect such insurance and pay the premiums thereon. The money so paid, with interest thereon, shall become a part of the debt hereby secured, and shall be otherwise recoverable from the Grantor as a debt; but there shall be no obligation upon the Trustee or holder of the note to effect such insurance. In event of foreclosure of this Deed of Trust, or other transfer of title to the premises in extinguishment of the indebtedness secured hereby, all right, title and interest of the mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee.

5. If the premises covered hereby, or any part thereof, shall be damaged by fire or other hazard against which insurance is held as heretofore provided, the amounts paid by any insurance company pursuant to the contract of insurance shall, to the extent of the indebtedness then remaining unpaid, be paid to the holder of the note secured hereby, and, at its option, may be applied to the debt or released for the repairing or rebuilding of the premises.

6. The Grantor further assigns unto the holder of the note any rents which may now or hereafter be due upon the real estate above described, it being understood that in event it becomes necessary by reason of default under any of the terms hereof for the holder of the note to collect said rents, the holder of the note shall have the right and privilege of employing agents for that purpose and paying a percentage of the rents collected to such agents for such collection. Prior to default Grantor shall be entitled to collect and retain for his own use the rents, issues and profits of said premises.

7. Grantor will pay all ground rents, taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, levied upon said premises except when payment for all such items has theretofore been made under (a) of paragraph 2 hereof, and he will promptly deliver the official receipts therefor to the holder of the note. In default thereof the holder of the note may pay the same.

8. Grantor shall not commit or permit waste; and shall maintain the property in as good condition as at present, reasonable wear and tear excepted. Upon any failure to so maintain, holder of the note, at its option, may cause reasonable maintenance work to be performed at the cost of Grantor. Any amounts paid therefor by holder of the note shall bear interest at the rate provided for in the principal indebtedness, shall thereupon become a part of the indebtedness secured by this instrument, ratably and on a parity with all other indebtedness secured hereby, and shall be payable thirty (30) days after demand.

* shall the late charge exceed Five Dollars ($5.00).

9. Upon the request of the holder of the note, the Grantor shall execute and deliver a supplemental note or notes for the sum or sums advanced by the holder of the note for the alteration, modernization or improvement made at the Grantor's request; or for maintenance of said premises or taxes or assessments against the same and for any other purpose elsewhere authorized hereunder. Said note or notes shall be secured hereby on a parity with and as fully as if the advance evidenced thereby were included in the note first described above. Said supplemental note or notes shall bear interest at the rate provided for in the principal indebtedness and shall be payable in approximately equal monthly payments for such period as may be agreed upon by the Grantor and holder. Failing to agree on the maturity, the whole of the sum or sums so advanced shall be due and payable thirty (30) days after demand by the holder. In no event shall the maturity extend beyond the ultimate maturity of the note first described above.

Notice of the exercise of any option granted herein, or in the note secured hereby, to the holder thereof, is not required to be given.

The lien of this instrument shall remain in full force and effect during any postponement or extension of the time of payment of the indebtedness or any part thereof secured hereby.

The party of the first part hereby waives the benefit of all homestead exemption as to the debt secured by this deed and as to any expenditure for insurance, taxes, levies, assessments, dues or charges, by the holder of the note in pursuance of this deed.

The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural, the plural the singular, the use of any gender shall include all other genders, and the term "Holder of the Note" shall include any payee of the indebtedness hereby secured or any transferee thereof whether by operation of law or otherwise.

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code and the Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of the parties hereto, and any provisions of this or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations are hereby amended and supplemented to conform thereto.

WITNESS the following signature(s) and seal(s).

The printed text and form of this instrument were prepared by the General Counsel, Veterans Administration. The typewritten material was inserted by or under the direction of Theodore H. Ghiz, Attorney at Law.

[signature] [SEAL]
Richard L. White

[signature] [SEAL]
Wilma A. White

[SEAL]

[SEAL]

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, } TO WIT:

I, [signature], a Notary Public of said County of Kanawha, do certify that Richard L. White and Wilma A. White, his wife, whose name s are signed to writing above, bearing date on the 12th day of December, 1978, have this day acknowledged the same before me in my said county.

Given under my hand this 12th day of December, 1978.
My commission expires on the 6th day of July, 1988.

[signature]
Notary Public.

This instrument was presented to the Clerk of the County Commission of Kanawha County, West Virginia, on DEC 12 1978 and the same is admitted to record.

[signature: Margaret W. Miller]

Kanawha County Commission

STATE OF WEST VIRGINIA

Deed of Trust

RICHARD L. WHITE and WILMA A. WHITE, his wife

TO

THEODORE H. GHIZ and DREXEL M. VEALEY

Received for Record on the ____, A. D. 19__ at ____ o'clock ____ M., and recorded in the office of the clerk of the county court of ____ County, West Virginia, Book No. ____ at page ____

Clerk

THEODORE H. GHIZ
600 KANAWHA BLVD. E.
CHARLESTON, W.V. 25301



**DEPARTMENT OF VETERANS AFFAIRS**
**Roanoke Regional Loan Center**
**210 Franklin Road SW**
**Roanoke VA 24011**

**e-mail: roanoke.lp@vba.va.gov**

December 19, 2001

In Reply Refer To: 314/264

TO WHOM IT MAY CONCERN

We have received your request for a duplicate Loan Guaranty Certificate (LGC). Because of our workload, duplicate LGCs on cases guaranteed prior to June of 1991, will not be issued. Necessary data to re-issue the LGC on cases guaranteed prior to this date is not in our current loan processing database. Issuance would require the original file to be recalled from a Federal Record Center and the data manually typed.

If you are requesting a duplicate LGC to submit a claim to the Department of Veterans Affairs on a property in foreclosure you should provide a letter on your letterhead explaining that the original LGC has been lost. Also, you may use this letter or submit a letter on your letterhead to inform us that the loan has been paid in full.

**To assist you, we have verified the following information:**

Veterans Name: Richard L. White

VA Loan Number: 14-15-2-0058428

| $22,500 | 12/78 | $13,500 | 60% |
|---|---|---|---|
| Loan Amount | Date of Loan | Guaranty Amount | Guaranty Percent |

John K Dietrich
JOHN K. DIETRICH
Loan Production Officer

264/h:lgy/lp/DUPLICATE OLD LGC

255770-0 - 29024 sh

AFTER RECORDING RETURN TO
THE KISSELL COMPANY
30 Warder St.
Springfield, OH 45501

BOOK 117 PAGE 529

# ASSIGNMENT OF DEED OF TRUST

For value received, and without recourse, the undersigned, THE KISSELL COMPANY, a corporation organized under the laws of the State of Ohio, does hereby GRANT, SELL, ASSIGN, TRANSFER AND SET OVER unto THE LOMAS & NETTLETON COMPANY, A CONNECTICUT CORPORATION 1600 VICEROY DRIVE DALLAS, TX 75235

all of its right, title and interest in and to that certain promissory note in the principal sum of Twenty Two Thousand Five Hundred ($ 22,500.00) bearing the date of the 12th day of December, 19 78, executed by Richard L. White and Wilma A. White, his wife

payable to the order of The Kissell Company as provided in the Deed of Trust securing said note and hereinafter described, together with that certain Deed of Trust and the benefits and privileges thereby created, executed by Richard L. White and Wilma A. White, his wife

To Theodore R. Ghiz and Drexel M. Vealey Trustee(s), dated the 12th day of December, 19 78, recorded in the office of the Clerk of the County Commission of Kanawha County, WEST VIRGINIA, in Trust Deed Book 1550, Page 83.

This assignment is subject to all the terms and conditions of said note and Deed of Trust.

IN WITNESS WHEREOF, the said THE KISSELL COMPANY has caused its corporate name to be hereto signed and its corporate seal to be affixed by CATHY LEWIS, its ASSISTANT SECRETARY thereunto duly authorized, this 1st day of December, 19 87.

(CORPORATE SEAL)

THE KISSELL COMPANY

BY: Cathy Lewis

CATHY LEWIS

ITS: ASSISTANT SECRETARY

STATE OF OHIO

COUNTY OF CLARK to wit:

The foregoing instrument was acknowledged before me this 1st day of December, 19 87, by CATHY LEWIS the ASSISTANT SECRETARY of THE KISSELL COMPANY, a corporation, on behalf of the corporation, as witness my hand and official seal.

My Commission expires

NOTARIAL SEAL

Notary Public in and for the County and State aforesaid

AMY R SMITH
Notary Public, State of Ohio
My Commission Expires 6-15-1989

This Instrument Prepared by:
Jill A. Smith, Attorney-At-Law

MK19 WV (TKC 6/86)

683225691AC1

This instrument was presented to the Clerk of the County Commission of Kanawha County, West Virginia, on and the same is admitted to record.

BOOK 144 PAGE 134

**RECORDING REQUESTED BY/ PREPARED BY/AFTER RECORDING RETURN TO:**

MMSI/Attn. Sherry Doza
2080 Post Oak Blvd.
Houston, Texas 77056
Tel. (800) 795-5263

Pool: 29024
Loan Number: 07-47-28439
FNMC Number 225691

Job Number: 225_9502

'Space Above this Line For Recorder's Use Only)

# ASSIGNMENT of DEED OF TRUST

**STATE OF WEST VIRGINIA**
**COUNTY OF KANAWHA**

KNOW ALL MEN BY THESE PRESENTS:

That LOMAS MORTGAGE USA, F/K/A THE LOMAS & NETTLETON COMPANY ('Assignor') acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note executed by RICHARD L. WHITE AND WILMA A. WHITE ('Borrower(s)') secured by a Deed of Trust of even date therewith from Borrower(s) to THEODORE H. GHIZ AND DREXEL M. VEALEY, Trustee, for the benefit of the holder of the said note, which was recorded on the lot(s), or parcel(s) of land described therein situated in the County of Kanawha, State of West Virginia:

Recording Ref: Book 1550, Page No. 83
Original Beneficiary: THE KISSELL COMPANY

For and in consideration of the sum of Ten and No/100 dollars ($10.00), and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto FIRST NATIONWIDE MORTGAGE CORPORATION (Assignee) all beneficial interest in and to title to said Deed of Trust, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land.

TO HAVE AND TO HOLD unto said Assignee said above described Deed of Trust and note, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

Executed this the 6 day of January A.D. 1996

LOMAS MORTGAGE USA, F/K/A THE LOMAS & NETTLETON COMPANY

By: ____________________
SHERRY DOZA
VICE PRESIDENT

THE STATE OF TEXAS
COUNTY OF HARRIS

On this the 6 day of January A.D. 1996, before me, a Notary Public, appeared SHERRY DOZA to me personally known, who being by me duly sworn, did say that (s)he is the VICE PRESIDENT of LOMAS MORTGAGE USA, F/K/A THE LOMAS & NETTLETON COMPANY, a corporation, and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said SHERRY DOZA acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

SALLY M. GRIMES
Notary Public
STATE OF TEXAS
My Comm. Exp. 8-17-98

Assignee's Address:
5280 CORPORATE DRIVE
FREDERICK, MD 21701

Assignor's Address:
8600 HARRY HINES BLVD.
DALLAS, TEXAS 75235

This instrument was presented to the Clerk of the County Commission of Kanawha County, West Virginia, on MAR 08 1996 and the same is admitted to record.

Teste: ____________ Clerk
Kanawha County Commission

*74726439*

683225691SAL

# Lawyers Title Insurance Corporation

A Stock Company

Home Office – Richmond, Virginia

## POLICY OF TITLE INSURANCE

**SCHEDULE A**

| AMOUNT | NAME OF INSURED | DATE OF POLICY |
|---|---|---|
| $22,500.00 | | December 12, 1978 at 3:07 P.M. |

The Kissell Company and/or Administrator of Veterans Affairs, His Successors and Assigns

1. The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage is:

   Fee Simple

2. The estate or interest referred to herein is at Date of Policy vested in:

   Richard L. White and Wilma A. White, his wife

3. The mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:

   DEED OF TRUST: Richard L. White and Wilma A. White, his wife, to Theodore H. Ghiz and Drexel M. Vealey, Trustees, dated December 12, 1978, filed for record December 12, 1978, Trust Deed Book 1550, page 83, Clerk's Office, County Commission, County of Kanawha, State of West Virginia.
   TO SECURE: $22,500.00.

4. The land referred to in this policy is described as follows:

   Being a part of Lots Nos. Seventy-Seven (77) and Seventy-Eight (78), Glenwood Heights Addition, City of Charleston, Kanawha County, West Virginia.

683225691TPL

Countersigned:

[signature]

Authorized Officer or Agent

Issued at: Charleston, West Virginia

THG 155

Page 1—Sched. A—Policy No. J 712081

ORIGINAL

ALTA Loan Policy—1970 (Rev. 10-17-70) Copyright 1969

Policy 82 Litho in U.S.A.
035-0-082-0000

ALTA Loan Policy—1970 (Rev. 10-17-70) Copyright 1969

# Lawyers Title Insurance Corporation

A Stock Company

Home Office – Richmond, Virginia

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;
2. Any defect in or lien or encumbrance on such title;
3. Lack of a right of access to and from the land;
4. Unmarketability of such title;
5. The invalidity or unenforceability of the lien of the insured mortgage upon said estate or interest except to the extent that such invalidity or unenforceability, or claim thereof, arises out of the transaction evidenced by the insured mortgage and is based upon (a) usury, or (b) any consumer credit protection or truth in lending law;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage, except any such lien arising from an improvement on the land contracted for and commenced subsequent to Date of Policy not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance; or
8. The invalidity or unenforceability of any assignment, shown in Schedule A, of the insured mortgage or the failure of said assignment to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

IN WITNESS WHEREOF the Company has caused this Policy to be signed and sealed, to be valid when Schedule A is countersigned by an authorized officer or agent of the Company, all in accordance with its By-Laws.

Lawyers Title Insurance Corporation

Robert C. Dawson

President

Attest:

Roy Broadhead

Secretary.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy:

1. Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law, ordinance or governmental regulation.
2. Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy.
3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy or acquired the insured mortgage and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent insurance is afforded herein as to any statutory lien for labor or material).
4. Unenforceability of the lien of the insured mortgage because of failure of the insured at Date of Policy or of any subsequent owner of the indebtedness to comply with applicable "doing business" laws of the state in which the land is situated.

# Lawyers Title Insurance Corporation

A Stock Company
Home Office ~ Richmond, Virginia

**SCHEDULE B—PART I**

This Policy does not insure against loss or damage by reason of the following:

1. Taxes for the year 1979, a lien, but not yet due and payable.

**SCHEDULE B—PART II**

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or charge of the insured mortgage upon said estate or interest:

None

Policy 82 Litho in U.S.A.
035-0-082-0002

ORIGINAL

ALTA Loan Policy—1970 (Rev. 10-17-70) Copyright 1969

Policy 82 Litho in U.S.A.
035-0-082-0002

ALTA Loan Policy—1970 (Rev. 10-17-70) Copyright 1969

# Lawyers Title Insurance Corporation

A Stock Company
Home Office ~ Richmond, Virginia

## CONDITIONS AND STIPULATIONS

**1. Definition of Terms**
The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of such indebtedness (reserving, however, all rights and defenses as to any such successor who acquires the indebtedness by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin or corporate or fiduciary successors that the Company would have had against the successor's transferor), and further includes (ii) any governmental agency or instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing said indebtedness, or any part thereof, whether named as an insured herein or not, and (iii) the parties designated in paragraph 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage hereunder.

(c) "knowledge": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of any public records.

(d) "land": the land described, specifically or by reference in Schedule A, and improvements affixed thereto which by law constitute real property; provided, however, the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": those records which by law impart constructive notice of matters relating to said lands.

**2. (a) Continuation of Insurance after Acquisition of Title**
This policy shall continue in force as of Date of Policy in favor of an insured who acquires all or any part of the estate or interest in the land described in Schedule A by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage, and if the insured is a corporation, its transferee of the estate or interest so acquired, provided the transferee is the parent or wholly owned subsidiary of the insured; and in favor of any governmental agency or instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage; provided that the amount of insurance hereunder after such acquisition, exclusive of costs, attorneys' fees and expenses which the Company may become obligated to pay, shall not exceed the least of:

(i) the amount of insurance stated in Schedule A;
(ii) the amount of the unpaid principal of the indebtedness as defined in paragraph 8 hereof, plus interest thereon, expenses of foreclosure and amounts advanced to protect the lien of the insured mortgage and secured by said insured mortgage at the time of acquisition of such estate or interest in the land; or
(iii) the amount paid by any governmental agency or instrumentality, if such agency or instrumentality is the insured claimant, in the acquisition of such estate or interest in satisfaction of its insurance contract or guaranty.

**(b) Continuation of Insurance after Conveyance of Title**
The coverage of this policy shall continue in force as of Date of Policy in favor of an insured so long as such insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest; provided, however, this policy shall not continue in force in favor of any purchaser from such insured of either said estate or interest or the indebtedness secured by a purchase money mortgage given to such insured.

**3. Defense and Prosecution of Actions—Notice of Claim to be given by an Insured Claimant**

(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or defenses, restraining orders or injunctions interposed against a foreclosure of the insured mortgage or a defense interposed against an insured in an action to enforce a contract for a sale of the indebtedness secured by the insured mortgage, or a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.

(b) The insured shall notify the Company promptly in writing (i) in case any action or proceeding is begun or defense or restraining order or injunction is interposed as set forth in (a) above, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If such prompt notice shall not be given to the Company, then as to such insured all liability of the Company shall cease and terminate in regard to the matter or matters for which such prompt notice is required; provided, however, that failure to notify shall in no case prejudice the rights of any such insured under this policy unless the Company shall be prejudiced by such failure and then only to the extent of such prejudice.

(c) The Company shall have the right at its own cost to institute and without undue delay prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, and the Company may take any appropriate action under the terms of this policy, whether or not it shall be liable thereunder, and shall not thereby concede liability or waive any provision of this policy.

(d) Whenever the Company shall have brought any action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any such litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(e) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured hereunder shall secure to the Company the right to so prosecute or provide defense in such action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such insured for such purpose. Whenever requested by the Company, such insured shall give the Company all reasonable aid in any such action or proceeding, in effecting settlement, securing evidence, obtaining witnesses, or prosecuting or defending such action or proceeding, and the Company shall reimburse such insured for any expense so incurred.

**Continued on cover sheet**

## CONDITIONS AND STIPULATIONS—CONTINUED

**4. Notice of Loss—Limitation of Action**

In addition to the notices required under paragraph 3(b) of these Conditions and Stipulations, a statement in writing of any loss or damage for which it is claimed the Company is liable under this policy shall be furnished to the Company within 90 days after such loss or damage shall have been determined and no right of action shall accrue to an insured claimant until 30 days after such statement shall have been furnished. Failure to furnish such statement of loss or damage shall terminate any liability of the Company under this policy as to such loss or damage.

**5. Options to Pay or Otherwise Settle Claims**

The Company shall have the option to pay or otherwise settle for or in the name of an insured claimant any claim insured against or to terminate all liability and obligations of the Company hereunder by paying or tendering payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred up to the time of such payment or tender of payment by the insured claimant and authorized by the Company. In case loss or damage is claimed under this policy by an insured, the Company shall have the further option to purchase such indebtedness for the amount owing thereon together with all costs, attorneys' fees and expenses which the Company is obligated hereunder to pay. If the Company offers to purchase said indebtedness as herein provided, the owner of such indebtedness shall transfer and assign said indebtedness and the mortgage and any collateral securing the same to the Company upon payment therefor as herein provided.

**6. Determination and Payment of Loss**

(a) The liability of the Company under this policy shall in no case exceed the least of:

(i) the actual loss of the insured claimant; or
(ii) the amount of insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in paragraph 2(a) hereof; or
(iii) the amount of the indebtedness secured by the insured mortgage as determined under paragraph 8 hereof, at the time the loss or damage insured against hereunder occurs, together with interest thereon.

(b) The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon an insured in litigation carried on by the Company for such insured, and all costs, attorneys' fees and expenses in litigation carried on by such insured with the written authorization of the Company.

(c) When liability has been definitely fixed in accordance with the conditions of this policy, the loss or damage shall be payable within 30 days thereafter.

**7. Limitation of Liability**

No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, or the lien of the insured mortgage, as insured, within a reasonable time after receipt of such notice; (b) in the event of litigation until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured, as provided in paragraph 3 hereof; or (c) for liability voluntarily assumed by an insured in settling any claim or suit without prior written consent of the Company.

**8. Reduction of Liability**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto; provided, however, such payments, prior to the acquisition of title to said estate or interest as provided in paragraph 2(a) of these Conditions and Stipulations, shall not reduce pro tanto the amount of the insurance afforded hereunder except to the extent that such payments reduce the amount of the indebtedness secured by the insured mortgage.

Payment in full by any person or voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in paragraph 2(a) hereof.

(b) The liability of the Company shall not be increased by additional principal indebtedness created subsequent to Date of Policy, except as to amounts advanced to protect the lien of the insured mortgage and secured thereby.

No payment shall be made without producing this policy for endorsement of such payment unless the policy be lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

**9. Liability Noncumulative**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage hereafter executed by an insured which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**10. Subrogation Upon Payment or Settlement**

Whenever the Company shall have settled a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant, except that the owner of the indebtedness secured by the insured mortgage may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness, provided such act occurs prior to receipt by the insured of notice of any claim of title or interest adverse to the title to the estate or interest or the priority of the lien of the insured mortgage and does not result in any loss of priority of the lien of the insured mortgage. The Company shall be subrogated to and be entitled to all rights and remedies which such insured claimant would have had against any person or property in respect to such claim had this policy not been issued, and if requested by the Company, such insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect such right of subrogation and shall permit the Company to use the name of such insured claimant in any transaction or litigation involving such rights or remedies. If the payment does not cover the loss of such insured claimant, the Company shall be subrogated to such rights and remedies in the proportion which said payment bears to the amount of said loss, but such subrogation shall be in subordination to the insured mortgage. If loss of priority should result from any act of such insured claimant, such act shall not void this policy, but the Company, in that event, shall be required to pay only that part of any losses insured against hereunder which shall exceed the amount, if any, lost to the Company by reason of the impairment of the right of subrogation.

**11. Liability Limited to this Policy**

This instrument together with all endorsements and other instruments, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company.

Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or any action asserting such claim, shall be restricted to the provisions and conditions and stipulations of this policy.

No amendment of or endorsement to this policy can be made except by writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**12. Notices, Where Sent**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall be addressed to its Home Office, 3800 Cutshaw Avenue, Richmond, Virginia 23230.

# Lawyers Title Insurance Corporation

A Stock Company
Home Office – Richmond, Virginia



Service available throughout the United States, Puerto Rico, the U.S. Virgin Islands and Canada.

National Division, Branch and Agency offices and Approved Attorneys located throughout the operating territory as shown on the map.

**Lawyers Title Insurance Corporation**
Home Office – Richmond, Virginia

Lawyers Title
Insurance Corporation
A Stock Company
Home Office
Richmond, Virginia

**Policy
of
Title Insurance**

***A word of thanks to our insured . . . . .***

As we make your policy a part of our permanent records, we want to express our appreciation of this evidence of your faith in Lawyers Title Insurance Corporation.

There is no recurring premium.

This policy provides valuable title protection and we suggest you keep it in a safe place where it will be readily available for future reference.

If you have any questions about the protection provided by this policy or wish to contact us for any other reason, write to:

Consumer Affairs Department
Lawyers Title Insurance Corporation
P.O. Box 27567
Richmond, Virginia 23261